No. 1496.—SIMON & LOEB *v.* STEAMSHIP FUNG SHUEY, CAPTAIN AND OWNERS.

A common carrier is responsible to the shipper or consignee for the non-delivery of goods which has occurred through his fault or negligence.

The omission of the consignee to institute proceedings to recover goods which have been stolen from the ship before delivery, will not relieve the carrier from the damages resulting from the failure to deliver.

The estimate of damages for the loss of goods by the carrier is their net value at the port of destination.

APPEAL from the Fourth District Court of New Orleans. *Théard, J. Phillips & Levy,* for plaintiffs and appellees. *Randolph, Singleton & Hardie,* for defendants and appellants.

LUDELING, C. J.· Simon & Loeb sued the defendants for the value of a case of merchandise shipped at New York on the *Fung Shuey* and consigned to the plaintiffs at New Orleans, on account of the non-delivery of the merchandise.

The defendants filed a general denial. There was judgment in favor of the plaintiffs and the defendants have appealed.

The defendants rely upon the terms of the contract between them and the shippers, as shown by the bill of lading, to relieve them from responsibility in this case. The exceptions in the bill of lading are as follows:

"It is expressly understood that the articles named in this bill of lading, *shall be at the risk of the owner, shipper or consignee thereof, as soon as delivered from the tackles of the steamer, at her port of destination,* the collector of the port being hereby authorized to grant a general order for discharge immediately after the entry of the ship, and they shall be received by the consignee thereof, package by package, as so delivered; and if not taken *away the same day by him, they may* (at the option of the steamer's agent), *be sent to store or permitted to lay where landed at the expense and risk of the aforesaid owner, shipper or consignee.*" R. 70.

The evidence proves that the consignee was at the wharf ready to receive the goods "as soon as delivered from the tackles of the steamer" from the moment she commenced to discharge her cargo until she finished unloading, and that the box in question was not delivered. Patrick Hays, agent of plaintiffs, testifies as follows: "I was at the steamer as soon as she commenced to discharge. I made the request for the goods as soon as she commenced to discharge. I was there from the time she commenced until she finished discharging. I received three out of the four cases. *The clerk told me* I was entitled to another case. I applied for it on the evening of the second March. I told the clerk I had received but three cases and wanted four. He told me to wait until the ship was discharged—it was not on the levee. I applied again on the third for the case. He searched for the goods

with me, but could not find the case. He said the case might come out by the next steamer. When she came, after the *Fung Shuey* was discharged, *we could not find the case.*" Felix Veaux who discharged the ship, says that "Simon & Loeb had *four* cases, and he delivered *three*—that he does not know whether the missing box was on the levee or not." The testimony of all the witnesses tends to the same effect.

The case of goods was not delivered to the consignees through the fault of the common carriers. The exceptions in the bill of lading did not exempt them from liability for loss occasioned by a want of due care, or by gross negligence.

The fact that a part of the goods was afterwards found in the possession of an auctioneer, where they had been conveyed by a person who had stolen them, does not prove that the goods were delivered in accordance with the terms of the contract.

It is also contended that it was the duty of Simon & Loeb, the consignees, to have obtained possession of the remnant of the goods found at the auctioneers, and thus have lessened the damages which the common carriers had incurred. We think they did all that could have been required of them when they made affidavit for the arrest of the thief and notified the carriers that a part of the contents of the missing case was at Hoffman & Marks. If a carrier loses goods the net value thereof at the place of delivery is the measure of damages. Parsons on Contracts, vol. 3 ; 18 An. p. 1.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed and that the appellants pay the costs of this appeal.